

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Douglas J. Johnson | ) | Civil Case No: 1:17-CV-252 |
|     Plaintiff | ) | |
| | ) | **Amended Complaint** |
| Vs. | ) | **Pursuant to Dodd Frank** |
| | ) | **Retaliation** |
| AmeriGas Propane LP | ) | 15 U.S.C. 78u-6 |
| Kathy L. Prigmore | ) | |
| | ) | |
|     Defendants (s) | ) | |

**Plaintiff demands         Court**

## JURISDICTION

1. Jurisdiction is conferred on this court pursuant to 15 U.S.C. 78u-6

## PARTIES

2. Plaintiff: Douglas J. Johnson
   281 Broome St.
   Catskill, N. Y. 12414

3. a. Defendant: AmeriGas Propane, LP
   460 North Gulph Rd.
   King of Prussia, Pa. 19406

b. Kathy L. Prigmore
   Vice President
   402 Briarwood Dr.
   Elverson, Pa. 19520

4. This action is brought pursuant to: Dodd Frank Act of 2010
                                       15 U.S.C 78-6.

5. Venue is invoked pursuant to 28 U.S.C. s 1391.

6. Defendant's conduct is discriminatory with respect to the following:

   Retaliation for reporting a protected action covered under Dodd Frank.

7. The conduct complained of in this action involves:

   Termination of Employment
   Retaliation

8.
                                  FACTS

On June 13, 2006 I was handed a letter from Kathy L. Prigmore who was taking over the Northeast Region from retiring VP, John Sette. I had to go to the home office to meet with Ms. Prigmore, Bob Knauss, compliamce officer, and Bill Katz, VP of Human Resources. This meeting was to discuss the investigation of me reporting pricing practices of AmeriGas and an alleged racial comment I was accused of making. The letter referenced the alleged comment and the actions taken by AmeriGas. I was never given an opportunity to defend the allegation. It also talked about me reporting that AmeriGas violated the Sarbanes Oxley Act of 2002. I had earlier reported that I believed that AmeriGas

was padding (adding) to the cost of gas and then charging contract customers a premium over the stated margin in the contract. I used the words Sarbanes Oxley which set off the investigation which I was suspended and harassed until they forced me to say that nothing happened. I had an audio tape that I gave them that confirms my reporting such activity. In the closing statement of that letter, Ms. Prigmore talks about me cooperating with her in price increases. She ends the letter telling me she expects full cooperation in pricing matters or will have no choice but to separate me from the company. I was a little surprised that such a statement was made even before she managed me, but took notice of the request. Ms. Prigmore managed the Northeast Region until the end of 2008 when she left to head the new SAP computer system. She returned to manage the Northeast Region in mid-October 2010. At some time during the months of November and December of 2010, Defendant Kathy L. Prigmore started to instruct the Market Managers of the Northeast Region to increase prices due to gallon shortfalls. These increases were for all customers who were on tiers, community pricing or any other price structure not tied to a fixed or cost plus margin contract. These instructions were made via conference calls and e-mails. Due to many reasons, the increases were not enough to offset the gallon losses and lost revenues. Ms. Prigmore was not satisfied with the results of these increases, so at some time during that period Ms. Prigmore started to send Market Managers spread sheets of customers who were under contract and instructed Market Managers to increase the margins on these contracts. These spreadsheets were sent from the pricing analysis group which included Brian Moore, Dan Caruso and Rich Moritz. Most of these customers were on a cost plus margin contract that was usually set up for a year. Cost plus margin customers were usually commercial customers and the set margin could not be changed unless the customer was contacted and a new contract was negotiated. I believed this directive to increase the margins was not legal due to not contacting the customer.

On or about January 11, 2011 I had a conference call with my managers and sales staff and told them I would be sending them spread sheets of contract customers and to make increases to the current contract margins of each customer. I received a tremendous amount of push back from my managers and sales staff. They made comments such as "this is not legal, I get a new

customer to sign a contract or verbally tell them the price and you want us to change it." I told them that I was only following directions and would not do this if I owned the company. As the conference call ended, I assured them that would contact Jean Konowalczyk, Region lawyer for AmeriGas for clarification on this practice and would get back to them when I got an answer.

On or about January 11, 2011 I reported to Jean Konowalczyk, Region lawyer for AmeriGas that I was receiving pricing directives from Ms. Prigmore to increase the margins on customers under cost plus margin contracts with AmeriGas. I believed these increases were illegal and I had compliance responsibilities to report. I referenced the issues I had in 2006 and said "here we go again". I told her of the push back I was getting from my managers and sales staff. Ms. Konowalczyk agreed that these pricing directives were not legal and said she would investigate and get back to me. This call was made from the Catskill N. Y. district office on or about January 11, 2011, shortly after the conference call I had with the managers and sales staff as explained already. There were subsequent e-mails and other conference calls with Ms. Prigmore where I expressed my feelings on the practice of adding margin to these type of customers. Ms. Prigmore was not happy with me and at one time said "You do it or I will". I am sure other Market Managers heard that statement as well as people from the pricing department. I never heard back from Ms. Konowalczyk but did get a call from Ms. Prigmore sometime in February of 2011 telling me that she would be visiting me on March 3, 2011 to discuss my taking on additional districts to increase my Market. On March 3, 2011 I was out to lunch and got a call from Joe Geeter, a HR manager from the home office telling me to return to my office, as Ms. Prigmore wanted to talk with me. I returned around 12:30. Ms. Prigmore and Mr Geeter were at my office. Ms. Prigmore walked into my office and started talking. Her words were "I have lost confidence that you will be able to lead the Market in the upcoming SAP rollout." This was a new computer system that was not due to go live until July-August 2011. She then proceeded to tell me that my employment with AmeriGas was being terminated, effective end of business day which was March 3, 2011. She then walked out and Mr. Joe Geeter entered. He instructed me to clean my desk and office of any personal items, handed me a legal envelope, told me to read it and

escorted me to the door. I left my office in some state of shock, trying to understand what just happened.

## CAUSES OF ACTION

9.

### FIRST CAUSE OF ACTION

The Dodd Frank act of 2010, 15 U.S.C. 78-u6 and SOX of 2002, 18 U.S.C. 1514 A, protect individuals from retaliation who report a protected action that he or she believes is a violation of federal security laws, or otherwise make disclosures required or protected under SOX. Dodd Frank has remedies and protections under section 922, 17 C. F. R. 240.21F-2 and 21F (h) (1) (A). I was terminated on March 3, 2011 after reporting what I believe is a protected action under the above statutes.

### SECOND CAUSE OF ACTION

Defendants, AmeriGas Propane LP and Kathy L. Prigmore failed to follow their own written code found on pages 18 & 19 of their Code of Business Conduct and Ethics which talks about Reporting Violations & Anti-Retaliation Policy. This section explicitly talks about how the company prohibits any type of retaliation for reporting any conduct or activity that he or she reasonably believes may violate the Company's Code of Business or any other suspected improper, unethical or illegal conduct or activities by anyone at the Company. This document can be found on their web page. I was not given the benefit of that code and therefore retaliated against for my reporting the protected action.

### THIRD CAUSE OF ACTION

Plaintiff seeks all remedies due him under the Dodd Frank Anti-Retaliation provision of the Dodd Frank Act of 2010.

10. I filed charges with the New York State Division on Human Rights, the New York City Commission on Human Rights or Equal Employment

Opportunity Commission regarding the alleged discriminatory acts on or about:   N/A.

11. The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter which was received by me on or about:            N/A.

12. The Plaintiff is an employee within the meaning of 15 U.S.C. 78-u6 and 18 U.S.C. 1514 A.

13. The defendants are an employer within the meaning of 15 U.S.C. 78-u6 and 18 U.S.C 1514 A.

14. The defendants are engaged in commerce within the meaning of 15 U.S.C. 78-u6 and 18 U.S.C. 1514 A.

15.   **PRAYER FOR RELIEF**

   **WHEREFORE**, plaintiff requests that this Court grant the following relief: Under Dodd frank, Plaintiff is entitled to double back pay, benefits and interest and reinstatement to job, plus all costs associated with action. Retaliation by the Defendant also caused the Plaintiff hardships due to his not being able to find gainful employment. Plaintiff had interviews with other Propane companies only to be told either they could not afford me or the job is on hold. I also applied for employment at other companies with related products to the Propane industry, with no success. The value for the above mentioned is $2,000,000 and I will waive any rights to reinstatement.

I declare under penalty of perjury that the foregoing is true and correct:

DATED  7-27-17                              Douglas J. Johnson