**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————

DOUGLAS J. JOHNSON,

                                Plaintiff,                  1:17-cv-252 (BKS/DEP)

v.

AMERIGAS PROPANE, L.P. and KATHY L.
PRIGMORE,

                              Defendants.

———————————————————————

**APPEARANCES:**

*For Plaintiff:*
Douglas J. Johnson, pro se
Catskill, NY 12414

*For Defendants:*
Michael L. Banks
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Jason D. Burns
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

       Plaintiff pro se Douglas J. Johnson brings this action against Defendants AmeriGas

Propane, L.P. ("AmeriGas") and Kathy L. Prigmore under the anti-retaliation provisions of the

Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6 ("Dodd-

Frank"), and Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("Sarbanes-Oxley"). (Dkt. No.

20). Plaintiff alleges that Defendants terminated his employment in retaliation for his complaint that AmeriGas was violating securities laws through unlawful pricing practices. (*Id.*). Presently before the Court are Defendants': (1) motion for summary judgment under Federal Rule of Civil Procedure 56 on the ground that Plaintiffs' claims are barred by the Agreement and General Release he signed after he was terminated and (2) supplemental motion for summary judgment on the ground that Plaintiff is not a "whistleblower" within the meaning of the Dodd-Frank anti-retaliation provision, as discussed in *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 772–73 (2018), which was decided after Defendants filed their initial motion for summary judgment. (Dkt. Nos 24, 32). Plaintiff opposes Defendants' motions. (Dkt. Nos. 27, 31, 34). For the following reasons, Defendants' supplemental motion for summary judgment is granted.[1]

## II.    FACTS[2]

AmeriGas is propane distribution company that sells propane to residential and commercial customers. (Dkt. No. 24-2, ¶ 2; Dkt. No. 27, ¶ 6). Plaintiff began his employment with AmeriGas in 1986, and was a market manager in AmeriGas' northeast region from 1995 until his termination on March 3, 2011. (Dkt. No. 24-2, ¶¶ 4, 7). Defendant Prigmore was Plaintiff's supervisor at the time he was terminated. (*Id.* ¶ 3; Dkt. No. 27-17, at 6).

One of the ways AmeriGas prices its products is "cost plus margin contracts." (Dkt. No. 27, ¶ 7). "In the winter of 2005-2006," Plaintiff recorded a conference call during which John Sette, the Vice President of AmeriGas Northeast Region, "talked about how AmeriGas added to their index cost of gas after telling [the] sales staff to convince . . . contract customers to allow

---

[1] As Plaintiff is proceeding pro se, Defendants served Plaintiff with a "Notice to Pro Se Litigants of the Consequences of Failing to respond to a Summary Judgment Motion," as required by Local Rule 56.2. (Dkt. No. 24, at 2); (Dkt. No. 32, at 2). Plaintiff filed responses opposing both Defendants' motions for summary judgment. (Dkt. Nos. 27, 31, 34).

[2] Where possible, the facts have been drawn from Defendants' statements of material facts (Dkt. Nos. 24-2, 32-2), Plaintiff's responses thereto (Dkt. Nos. 27-17, at 6; 34-2), and the attached exhibits.

[AmeriGas] to put their contracts on [its] index cost and take advantage of [its] buying power and trust . . . that they would be advantaged." (*Id.* ¶ 8). During the call, Sette stated that "AmeriGas didn't think [this practice] was right as the customer did not know the true cost" and that he would "look into this issue." (*Id.* ¶ 9).

In May 2006, Plaintiff "was falsely accused of making racial comments after a meeting and during a dinner" with AmeriGas employees. (*Id*. ¶ 12). Plaintiff, who did not receive an opportunity to address the allegations, was "outraged . . . and responded by using the words Sarbanes Oxley, referencing John Sette's statements about AmeriGas adding to [its] cost of propane." [3] (*Id.* ¶¶ 13–14). Plaintiff provided AmeriGas with a copy of the recording and AmeriGas conducted "some type of investigation." (*Id.* ¶ 17). Following this incident, AmeriGas suspended Plaintiff for seven weeks and informed him that he would not receive his annual bonus. (*Id.* ¶ 18). In addition, Plaintiff received a memorandum, dated June 13, 2006, from Defendant Prigmore regarding "Remedial and Disciplinary Measures," and warning that "[i]f there are further issues that give rise to discipline or if your behavior prevents you from working together effectively with me or a subsequent supervisor, we will have no choice but to separate you from the Company." (Dkt. No. 27-3, at 2–4). It did not, however, "tell the whole story of the alleged racial comments [or] the investigation into [Plaintiff's] referencing Sarbanes Oxley." (Dkt. No. 27, ¶ 18; Dkt. No. 27-3, at 2–4).

After he returned to work, Plaintiff met with Lon Greenberg, the chief executive officer of UGI Corp., "the general partner of AmeriGas," and "talked . . . about the issues that led to [Plaintiff's] suspension," AmeriGas' failure to provide Plaintiff the opportunity to defend

---

[3] The Sarbanes-Oxley Act of 2002 "created new protections for employees at risk of retaliation for reporting corporate misconduct. *Digital Realty Trust, Inc.*, 138 S. Ct. at 773 (citing 18 U.S.C. § 1514A). To recover under § 1514A, an aggrieved employee must exhaust administrative remedies by "filing a complaint with the Secretary of Labor," *id.* (quoting 18 U.S.C. § 1514A(b)(1)(A)), within a 180-day time period. 18 U.S.C. § 1514A(b)(2)(D).

himself, and Plaintiff's "displeasure with losing [his] yearly bonus." (Dkt. No. 27, ¶ 20). Plaintiff "indicated" to Greenberg that maybe they should "visit the . . . [AmeriGas] compliance officer as well as VP of law to discuss [Plaintiff's] reporting the John Sette audio recording." (*Id.* ¶ 22). Greenberg responded that they "could do that, but told [Plaintiff] to make sure that [he] wanted to as AmeriGas would keep [him] tied up in court for years, as it was not [Greenberg's] money being spent, rather AmeriGas money." (*Id.* ¶ 23). Plaintiff "was taken back by that statement, but needed a job and decided to stay quiet." (*Id.* ¶ 24).

Between November 2010 and January 2011, Prigmore instructed her subordinates, including Plaintiff, "to start increasing prices to all customers including those on a cost plus margin contract" and "to look at the present margin and increase that margin as much as we felt would help in our quest to gain more revenue." (*Id.* ¶¶ 28–29). Plaintiff communicated Prigmore's instructions to his managers, many of whom "voiced their concerns about adding monies to cost plus margins contracts." (*Id.* ¶ 33). Plaintiff responded that he would contact the legal department for "clarification on the directives he was receiving" from Prigmore. (*Id.* ¶ 35).

Plaintiff and a district manager, as a "witness to the call as the conversation was on speaker phone," called Jean Konowalczk, "Region lawyer for AmeriGas sometime in the December 2010-January 2011 time frame" and told her about "the directives [he] was receiving from Ms. Prigmore and the concerns [he and his managers had] about raising these type of customers without telling them." (*Id.* ¶¶ 37, 40). Konowalczk responded that AmeriGas "should not being doing this as it was illegal and she would check into [Plaintiff's] concerns and get back to [him]." (*Id.* ¶ 39). Plaintiff did not hear back from Konowalczk. (*Id.* ¶ 42).

On March 3, 2011, Prigmore told Plaintiff she had "lost confidence in" him and that he "was being terminated effective" that day. (*Id.* ¶ 43; Dkt. No. 24-7, at 2–3). A human resources

representative gave Plaintiff an envelope and told Plaintiff that if he "signed the document in the envelope, AmeriGas would not contest [his] unemployment." (*Id.* ¶ 47). The document was an "Agreement and General Release," which states that AmeriGas would pay Plaintiff $42,300 in exchange for his agreement to release AmeriGas:

> from any actions, suits, debts, claims, and demands whatsoever in law or in equity . . . which the Employee ever had, now has, or may have . . . from the beginning of the Employee's employment relationship . . . to the date of this Agreement and General Release, and . . . any claims which have been asserted or could have been asserted or could be asserted now or in the future under the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.*; the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*; and any and all other federal, state or local laws and any common law claims now or hereafter recognized.

(Dkt. No. 24-8, at 2). The agreement advises the employee "*to consult with an attorney before signing this Agreement and Release*," and further states:

> *The Employee has read the terms of this Agreement and General Release and understands its terms and effects. The Employee has signed this Agreement and General Release with the intention of releasing all claims against the Employer and Affiliates in exchange for the payment described . . . above, which the Employee acknowledges is valid and sufficient consideration for this Agreement and General Release.*

(*Id.*).

The Agreement and General Release states that "*[t]he Employee may consider this Agreement and General Release for a period of up to twenty-one days from the date on which it is presented to the Employee*" and that the "*Employee may revoke [it] at any time within seven days after signing it by delivering written notice to AmeriGas.*" (*Id.* at 3).

On March 5, 2011, Plaintiff sent an email to Greenberg outlining his service to AmeriGas, his performance, and the circumstances of his termination. (Dkt. No. 27-10, at 3–5). Plaintiff wrote that he was 61, had health issues, and was "a short time from retirement." (*Id.* at

4). Plaintiff indicated that the "severance package is only a bandage" and that he "would like to have [his] medical benefits extended to retirement" and the "employee gas" discount. (*Id*. at 4–5). On March 9, 2011, Plaintiff sent an email to Gene Bissell, president and chief executive officer of AmeriGas concerning his performance, 25 years of service, and sudden termination and requested reconsideration of his severance package. (Dkt. No. 27-9, at 2–4). Plaintiff did not receive a response to either email prior to signing the Agreement and General Release on March 17, 2011.[4] (Dkt. No. 27, ¶ 53).

Bissell replied via email on April 12, 2011, and explained that he did not respond to Plaintiff's "first letter" because he had been advised "not to reply until [Plaintiff] had signed the agreement." (Dkt. No. 27-12, at 2). Bissell wrote that he supported the decision to terminate Plaintiff's employment but thanked Plaintiff "for all that [he] contributed over the years to AmeriGas." (*Id*.).

In or about August 2011, Plaintiff spoke with Robert Knauss, "AmeriGas VP of law," about the report Plaintiff made to Konowalczk "concerning the pricing practices directed by . . . Prigmore." (Dkt. No. 27, ¶¶ 20, 73). In August and September 2011, Plaintiff and Knauss communicated via email about Plaintiff's allegations of "margin mark-up" and Knauss' investigation of those allegations. (Dkt. No. 24-1, at 3–7). Plaintiff states that "[t]his went on for months, but [he] was never given any satisfaction." (Dkt. No. 27, ¶ 75).

In October 2011, Plaintiff "contacted Milberg, LLP a law firm in New York" with his "concerns about AmeriGas pricing practices." (*Id.* ¶ 76). Milberg contacted the Securities and

---

[4] On March 1, 2011, Plaintiff placed his father in a nursing home. (Dkt. No. 27, ¶ 64). Shortly after Plaintiff was terminated, his father developed pneumonia. (*Id.*). Plaintiff asserts that he was "preoccupied with his father's health issues and unknowingly gave up rights he had under the many State and Federal Statutes listed in the Agreement and General Release." (Dkt. No. 27-17, at 9). Plaintiff's father died on March 31, 2011. (Dkt. No. 27, ¶ 71).

Exchange Commission ("SEC"), and according to Plaintiff, "the case is apparently ongoing." (*Id.* ¶ 77).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the

movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted).

Where the plaintiff proceeds pro se, the Court must read his or her submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

IV.   **DISCUSSION**

   A.   **Dodd-Frank**

Defendants seek summary judgment dismissing Plaintiff's retaliation claim on the ground that he was not a "whistleblower" within the meaning of Dodd-Frank at the time of his termination. Dodd-Frank, passed in the aftermath of the financial crisis of 2009, embodies Congress' determination to improve financial regulations. *Digital Realty*, 138 S. Ct. at 773. To assist the SEC "in identifying securities law violations," Dodd-Frank "established 'a new, robust

whistleblower program designed to motivate people who know of securities law violations to tell the SEC'" and added a provision to the Securities Exchange Act of 1934 giving whistleblowers protection from retaliation. *Id*. (quoting S. Rep. No. 111–176, p. 38 (2010)); 15 U.S.C. § 78u-6(h)(1)(A) ("No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower."). Dodd-Frank's protection, however, extends only to a "circumscribed class; it defines 'whistleblower' to mean a person who provides 'information relating to a violation of the securities laws to the Commission.'" *Digital Realty*, 138 S. Ct. at 772 (quoting 15 U.S.C. § 78u-6(a)(6)).

Dodd-Frank protects a whistleblower's conduct in three situations: (1) when a whistleblower provides information to the SEC in accordance with § 78u-6; (2) when a whistleblower initiates, testifies in, or assists in an investigation, or judicial or administrative action, of the SEC based upon or related to information provided to the SEC in accordance with § 78u-6; and (3) when a whistleblower makes disclosures required or protected under Sarbanes-Oxley, or other laws specified in § 78u-6(h)(1)(A), in accordance with that other law, rule, or regulation's requirements. 15 U.S.C. § 78u-6(h)(1)(A); *see Digital Realty*, 138 S. Ct. at 774 ("[T]he [third] clause shields an employee's reports of wrongdoing to an internal supervisor if the reports are independently safeguarded from retaliation under Sarbanes-Oxley.").

In *Digital Realty*, the Supreme Court held that an individual must have reported a violation to the SEC to meet Dodd-Frank's definition of a whistleblower, and thus qualify for protection from retaliation:

> The question presented: Does the anti-retaliation provision of Dodd–Frank extend to an individual who has not reported a violation of the securities laws to the SEC and therefore falls outside the Act's definition of "whistleblower"? Pet. for Cert. (I). We answer that question "No": To sue under Dodd–Frank's anti-

> retaliation provision, a person must first "provid[e] . . . information relating to a violation of the securities laws to the Commission."

*Digital Realty*, 138 S. Ct. at 772–73 (quoting 15 U.S.C. § 78u-6(a)(6)). The Supreme Court explained that to qualify for protection under Dodd-Frank and individual must: (1) fall within the definition of whistleblower and (2) have engaged in protected conduct:

> The whistleblower definition operates in conjunction with the three clauses of § 78u-6(h)(1)(A) to spell out the provision's scope. The definition first describes *who* is eligible for protection—namely, a whistleblower who provides pertinent information "to the Commission." § 78u-6(a)(6). The three clauses of § 78u-6(h)(1)(A) then describe what *conduct*, when engaged in by a whistleblower, is shielded from employment discrimination. *See* § 78u-6(h)(1)(A)(i)–(iii). An individual who meets both measures may invoke Dodd-Frank's protections. But an individual who falls outside the protected category of "whistleblowers" is ineligible to seek redress under the statute, regardless of the conduct in which that individual engages.

*Digital Realty*, 138 S. Ct. at 777.

In *Digital Realty*, Somers alleged that "Digital Realty terminated him shortly after he reported to senior management suspected securities-law violations by the company." 138. S. Ct. at 776. Somers did not "alert[] the SEC" of these suspected violations "prior to his termination." *Id*. The Supreme Court therefore found that because Somers "did not provide information 'to the Commission' before his termination, § 78u-6(a)(6) . . . he did not qualify as a 'whistleblower' at the time of the alleged retaliation" and was "ineligible to seek relief under § 78u-6(h)." *Id*. at 778.

Here, it is undisputed that Plaintiff did not make a complaint to the SEC until *after* his termination. Moreover, nothing about his internal complaint to Konowalczk, "Region lawyer for AmeriGas," in December or January prior to his March 2011 termination suggests it could be

construed as a report to the SEC.[5] (Dkt. No. 27, ¶¶ 37, 40). Thus, because Plaintiff was not a

"whistleblower" under Dodd-Frank at the time he complained to Konowalczk or at any time

prior to his termination, his § 78u-6(h) retaliation claim fails.[6] *See Price v. UBS Fin. Servs., Inc.*,

No. 17-cv-01882, 2018 WL 1885669, at *2, 2018 U.S. Dist. LEXIS 66200, at *6 (D.N.J. Apr.

19, 2018) ("Plaintiff does not allege that he reported any information to the SEC prior to his

termination. His testimony to the [Financial Industry Regulatory Authority] plainly does not

meet the statutory requirement and he, therefore, is not a whistleblower under Dodd-Frank.

Furthermore, any attempt to amend his complaint with facts stating that he disclosed information

to the SEC after his termination would be futile."); *see also Digital Realty*, 138 S. Ct. at 777

("Dodd-Frank's purpose and design corroborate our comprehension of § 78u-6(h)'s reporting

requirement. The 'core objective' of Dodd-Frank's robust whistleblower program . . . is 'to

motivate people who know of securities law violations to *tell the SEC*.'" (quoting S. Rep. No.

111-176, at 38)).

## B.   Sarbanes-Oxley

To the extent Plaintiff also alleges that his termination violated Sarbanes-Oxley, (Dkt.

No. 20, at 5 (First Cause of Action)), Defendants assert that they are entitled to summary

---

[5] Plaintiff argues that he is entitled to protection under 15 U.S.C. § 78j-1(b)(3)(B), (Dkt No. 34-3, at 7), which "requires auditors and attorneys to report certain information within the company before making disclosures externally." *Digital Realty*, 138 S. Ct. at 780; *see* 15 U.S.C. § 78j-1(b);. However, this section was directly addressed by the Supreme Court in *Digital Realty* and deemed not to alter the requirements for protection under Dodd-Frank. *Digital Realty*, 138 S. Ct. at 780 ("Our reading shields employees in these circumstances, however, *as soon as they also provide relevant information to the Commission*. True, such employees will remain ineligible for Dodd-Frank's protection until they tell the SEC, but this result is consistent with Congress' aim to encourage SEC disclosures."). Accordingly, Plaintiff cannot seek protection under § 78j-1(b)(3)(B) when he did not report any securities law violations to the SEC prior to his termination.

[6] Although Plaintiff claims he "followed the SEC guidelines as written . . . at the time of his filing," (Dkt. No. 34-3, at 3), "[a] federal court generally will apply the law in effect at the time it renders its decision." *Gonzalez v. Home Ins. Co.*, 909 F.2d 716, 723 (2d Cir. 1990). While there are instances in which a court may depart from this rule, "when the Supreme Court, in announcing a new principle, itself applies it retroactively to the case at bar, generally 'no sound reason exists for not doing so'" in a later case. *Id.* Therefore, the Supreme Court's interpretation in *Digital Realty* is both binding on this Court and determinative of the case at hand.

judgment dismissing such a claim because Plaintiff does not allege he has met the administrative

exhaustion requirement, (Dkt. No. 32-1, at 4; Dkt. No. 32-1, at 5 n.4). *See Digital Realty*, 138 S.

Ct. at 776 (noting that Somers did not "file an administrative complaint within 180 days of his

termination, rendering him ineligible for relief under Sarbanes-Oxley"); 18 U.S.C. §

1514A(b)(2)(D). Indeed, there is no evidence from which a reasonable fact-finder could

conclude that Plaintiff filed an administrative complaint within the relevant time period.

Accordingly, Defendants' motion for summary judgment is granted.[7]

## C.      State Law Claim

Though Defendants do not address it, Plaintiff's Second Cause of Action appears to be a

state law claim concerning whether Defendants followed AmeriGas' "Code of Business Conduct

and Ethics" when they terminated him after he complained to Konowalczyk. (Dkt. No. 20, at 5).

Having found, however, that all of Plaintiff's federal claims against all Defendants are subject to

dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining

state-law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to

exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has

dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated

before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—

judicial economy, convenience, fairness, and comity—will point toward declining to exercise

jurisdiction over the remaining state-law claims."). Accordingly, Plaintiffs' state-law claims

against Defendants are dismissed.

---

[7] Having granted summary judgment on the grounds raised in Defendants' supplemental motion, the Court need not reach Defendants' arguments concerning Plaintiff's purported waiver and release of all claims.

## V.      CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment as supplemented (Dkt. Nos. 24, 32) is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 20) is **DISMISSED with prejudice** in its entirety.

**IT IS SO ORDERED.**

Dated:  May 21, 2018
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge